UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 08-00291(1)(MJD) |
| Plaintiff, | |
| v. | **DEFENDANT MCKAY'S POSITION WITH REGARD TO SENTENCING** |
| DAVID GUY MCKAY, | |
| Defendant. | |

This sentencing memorandum suggests, first, that the guidelines calculations contained in the presentence report are deficient in that Mr. McKay should not receive a two-level enhancement for obstructing.  Additionally, the presentence report appropriately suggests that Mr. McKay should receive a two-level reduction for acceptance of responsibility.  Next, it is suggested that a departure from the appropriate guideline range is appropriate because the criminal history category calculated in the presentence report (II) overstates Mr. McKay's criminal history.  Finally, it is our position that a proper application of the factors set forth in 18 U.S.C. § 3553 (a) requires a variance and a sentence less than those suggested by the guidelines.

**I.   MR. MCKAY SHOULD NOT RECEIVE A TWO-LEVEL ADJUSTMENT FOR OBSTRUCTING OF JUSTICE.**

The presentence report, ¶ 25 suggests that Mr. McKay should receive a two-level increase pursuant to § 3C1.1, which states:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or

1

sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

Application Note 2 states, in part:

In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

In this case, the presentence report indicates Mr. McKay falsely claimed at the trial that he was "entrapped" and that he falsely claimed that there was a meeting where "the use of Molotov cocktails was mentioned for the first time by the informant." PSR, ¶ 25.

At his sentencing hearing, codefendant Brad Crowder spoke for the first time about the Brandon Darby's activities in this matter. Mr. Crowder's in-court demeanor suggested he did so with great reluctance. He told the court that he looked up to Mr. Darby. He said that Mr. Darby was very influential in his life. Crowder stated that at one point, he told Mr. Darby to tell him what needed to be done and that he would do it. Mr. Crowder said that when Mr. Darby challenged Mr. Crowder directly when he call him a "tofu eater". Mr. Crowder indicated that Mr. Darby would frequently encourage them in ways that were clear, indirect challenges and calls to action. Mr. Crowder gave a specific example that occurred in the van ride on the way to the RNC,

Mr. Crowder's statements were entirely consistent with Mr. McKay's testimony on these points. Mr. Darby himself admitted much of this behavior in his testimony. The fact that the defense argued that these facts are consistent with an entrapment defense does not make the existence of these facts any less true. Perhaps, more importantly, it indicates Mr. McKay's testimony did not constituted perjury.

2

Further, Mr. McKay indicated during his plea colloquy that he struggles to clearly remember the content of the conversations that occurred on the evening of August 31st that led to the decision to make the Molotov cocktails. He stated during that colloquy that he "wanted" to believe that the suggestion came from Darby. His testimony in this regard is exactly the situation discussed in Application Note 2, i.e. "inaccurate testimony" resulting from "confusion, mistake, or faulty memory." It was not a willful, intention lie.

For these reasons, the two-level enhancement for obstructing should not apply.

## II. THE PRESENTENCE REPORT PROPERLY APPLIES A TWO-LEVEL REDUCTION FOR ACCEPTENCE OF RESPONSIBILITY.

The presentence report suggests that Mr. McKay should receive a two-level reduction for acceptance of responsibility. PSR, ¶ 26. This provision states this reduction is appropriate where the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).

On the day he was arrested and again on the next day, Mr. McKay was interviewed by law enforcement. On both of these occasions, he indicated his involvement in the manufacturing and possession of the Molotov cocktails. He has never wavered on this issue.

This case is unusual in that Mr. McKay's guilty plea was preceded by a trial that ended in hung jury. At the trial, he testified in detail about the steps he and Mr. Crowder took to commit this offense. Regarding Darby's role in this offense, as discussed above, Mr. McKay's testimony was corroborated by Mr. Crowder's statements at the time of his sentencing. Thus, Mr. McKay's trial testimony on the issue of entrapment should not constitute a basis to deny his acceptance of responsibility.

3

### III. A DOWNWARD DEAPRTURE IS APPROPRIATE BECAUSE CRIMINAL HISTORY CATEGORY II OVER -REPRESENTS THE SERIOUSNESS OF HIS CRIMINAL HISTORY.

Section 4A1.3 of the United States Sentencing Guidelines states that when "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3(b)(1). After the Court reviews all the relevant information, the Court may conclude that the Defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category. Id. Although § 4A1.3 is a policy statement, rather than a guideline, it is to be treated as an authoritative guide to district courts. Williams v. United States, 503 U.S. 193, 201 (1991)(" . . . statement is an authoritative guide to the meaning of the applicable Guideline").

The presentence report indicates Mr. McKay has two criminal history points. PSR, ¶ 31. Thus, he fits into the criminal history category II (2-3 points). The first point stems from a "assault" that occurred when Mr. McKay, at the age of 18, called the police after he engaged in an argument with his father who had been drinking. The second point comes from his possession of two burnt down joints, something that would constitute a petty misdemeanor in most jurisdictions.

Under these circumstances, criminal history category II "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes" and a departure pursuant to § 4A1.3 is appropriate.

4

**IV. APPLICATION OF THE SENTENCING FACTORS DELINIATED IN 18 U.S.C. § 3553(a) REQUIRES A VARIANCE FROM THE GUIDELINE RANGE.**

The Sentencing Guidelines are no longer a mandatory regime, instead, the district Court must take the advisory guidelines into account together with other sentencing factors set forth in 18 U.S.C. § 3553 (a). United States v. Booker, 543 U.S. 220, 259-60 (2005). The court may impose a sentence outside the applicable sentencing guideline range in order to "tailor the sentence in light of the other statutory concerns" in § 3553(a). Kimbrough v. United States, 552 U.S. ----, 128 S.Ct. 570 (2007)(citing Booker at 245 – 46).

In this case, there are several factors listed in U.S.C. § 3553(a) that justify a substantial downward variance. U.S.C. § 3553(a)(1) states that the Court should consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Id. Additionally, 18 U.S.C. § 3553 (a)(2) directs the Court to consider: "the need for the sentence imposed –

   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B)   to afford adequate deterrence to criminal conduct;
   (C)   to protect the public from further crimes of the defendant; and
   (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"

Testimony at the trial, the presentence report and the testimonials provided to the Court all reflect well on Mr. McKay's character. They show him to be an industrious,

5

kind-hearted person with significant family and community support.  This information strongly suggests that this incident was greatly out of character.

The facts surrounding the offense itself suggest significant mitigation.  The decision to make the Molotov cocktails was made in the evening hours of August 31st.  Any plan to use them was abandoned within hours.  While the government made repeated reference to statements made by Mr. McKay in the days that followed, and in the early morning hours of September 3rd in particular, Mr. McKay's actions clearly indicate that he had abandoned any thought of using the Molotov cocktails. ("Action speaks louder than words but not nearly as often." – Mark Twain).  He was arrested only hours before taking a prearranged flight home to Texas and after having had two full days and three nights to use the Molotov cocktails.

The fact that Mr. McKay chose to quickly abandon any use of the Molotov cocktails is a further reflection of Mr. McKay's character.  Neither the government nor the presentence report suggest a possible four-level enhancement for possession of with intent to use in a felony pursuant to  U.S.S.G. § 2K2.1(b)(6).  The government suggests the lower sentence consistent with not applying this provision adequately "compensates" Mr. McKay for abandoning any plan to use the Molotov cocktails.  This suggestion, however, ignores the fact that this decision by Mr. McKay is also relevant to assess Mr. McKay's character, the extent to which the public needs to be protected from him and the likelihood that he may engage in future criminal conduct.  His decision to abandon these activities reflects well on his character and suggests a reduced likelihood of any future criminal conduct.

Similarly, the conduct of Brandon Darby is similarly relevant to the factors set forth is 18 U.S.C. § 3553(a).  His involvement does merit a variance from the guideline sentence.  It is simply undisputed that Brandon Darby was in a position to influence McKay and Crowder.  Darby admitted as much in his e-mails and during the trial.  He was ten years older than them.  He had a significant history of activism and protest.  He had gained notoriety for literally feeding and healing homeless people in the wake of Hurricane Katrina.  Further, it is uncontroverted that he exploited this position of trust by challenging them and insulting them.  He did this repeatedly and over a course of six months.

Even with a significant variance, any sentence imposed by the court will carry a substantial penalty, one that will meet those needs outlined above.  Such a sentence will certainly reflect the seriousness of the defendant's conduct, promote respect for the law, deter future similar conduct and protect the public.

Finally, U.S.C. § 3353(a)(6) states that the Court's sentence should reflect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  On May 14, the Court imposed a sentence of 24 month on codefendant Brad Crowder.  A similar sentence should be imposed in this case, where Mr. McKay has a similar criminal history and almost identical conduct.

## RECOMMENDATIONS TO THE BOP

Mr. McKay requests that the Court recommend placement as near to his family in Austin, Texas as possible.

## CONCLUSION

For the reasons previously stated, the Court should first reduced the applicable guideline range to reflect and total offense level of 22, and find that the appropriate criminal history category is I, thus, yielding a relevant guideline range of 41 – 51 months. Additionally, the Court should grant the Defendant, David McKay' request for a downward variance and impose a sentence of 24 months.

Dated: This 18th day of May, 2009.

Respectfully submitted,

*/s/ Jeff DeGree*
Jeffrey C. DeGree (0252281)
Torres, DeGree & Assoc.
545 Colonial Warehouse
212 Third Avenue North
Minneapolis, MN 55401
Telephone: (612)746.4277

***Attorney for Defendant David McKay***